NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

AHMED HAMEED, *Petitioner/Appellant,*

*v.*

SAFA SAMEER ABDULWAHHAB QANDEEL, *Respondent/Appellee.*

No. 1 CA-CV 24-0470 FC

FILED 02-11-2025

Appeal from the Superior Court in Maricopa County
No.  FC2022-092873
The Honorable Keith A. Miller, Judge

**AFFIRMED IN PART; VACATED IN PART**

COUNSEL

Cosmas Onyia PC, Phoenix
By Cosmas Onyia
*Counsel for Petitioner/Appellant*

Warner Angle Hallam Jackson & Formanek PLC, Phoenix
By Giancarlo A. Sapelli, David N. Horowitz
*Co-Counsel for Respondent/Appellee*

Reardon House Colton PLC, Scottsdale
By Kristi A. Reardon
*Co-Counsel for Respondent/Appellee*

_____

**MEMORANDUM DECISION**

Judge Andrew M. Jacobs delivered the decision of the Court, in which Presiding Judge Cynthia J. Bailey and Vice Chief Judge Randall M. Howe joined.

_____

**J A C O B S**, Judge:

**¶1**         Ahmed Hameed ("Husband") appeals the superior court's decree of dissolution of marriage awarding Safa Sameer Abdulwahhab Qandeel ("Wife") one kilogram of gold and back child support, and sanctioning Husband $25 per day until he delivers the gold to Wife. We affirm the court's award of gold, but vacate the order of back child support and the sanction order, both of which Wife disclaims in this Court.

**FACTUAL AND PROCEDURAL HISTORY**

**¶2**         Husband and Wife wed in April 2019. They have one child in common, L.H., born in November 2020. In July 2022, Husband filed a Petition for Dissolution of Non-Covenant Marriage. Later that month, Wife filed a Response to Petition for Dissolution of a Non-Covenant Marriage (Divorce) with Minor Children ("Response").

**¶3**         Wife's Response asserted that the parties had a "written agreement signed by both parties about . . . division of property/debt[.]" Wife attached the written agreement, an Islamic marriage contract (the "Agreement"), to her Response. The Agreement, signed by both parties before the marriage, provided that Husband committed to deliver to Wife a "full amount of $25,000 [and] one [k]ilogram of gold grade 21 dowry[.]" The Agreement provided that Husband was to deliver the kilogram of gold to Wife "at any time she requests it." As to the $25,000 amount, the Agreement describes Husband's duty to pay the amount as "deferred" while also describing it as "advanced[.]"

**¶4**         After a bench trial in February 2024, the court issued a Decree of Dissolution of Marriage ("Decree") on May 2, 2024, dissolving the parties' marriage and awarding both parties joint legal decision-making as well as joint parenting time with L.H. The court also ordered Husband to pay Wife $1,100 per month of child support. Moreover, the court ordered Husband to pay Wife $6,000 "as past support for the three-year period prior to filing of the current petition until [the issuance of the Decree]." Finally,

the court partially enforced the Agreement, awarding Wife "one [k]ilogram of gold grade 21." The court did not, however, enforce the $25,000 provision, finding the Agreement's language describing the payment both as "advanced" and "deferred" was contradictory and most likely "a typographical error[.]"

¶5        Husband timely appealed. We have jurisdiction. Ariz. Const. art. 6, § 9; A.R.S. §§ 12-2101(A)(1), -120.21(A)(1).

## DISCUSSION

## I.    The Parties' Premarital Agreement Was Sufficiently Pled and Is Enforceable.

¶6        We review the enforceability of a premarital agreement de novo. *See In re Marriage of Pownall*, 197 Ariz. 577, 580 ¶ 7 (App. 2000). A premarital agreement is "an agreement between prospective spouses that is made in contemplation of marriage and that is effective on marriage." A.R.S. § 25-201(1). The agreement "must be in writing and signed by both parties[]" to be enforceable. A.R.S. § 25-202(A). Religious premarital agreements may be enforceable, so long as they are interpreted under "neutral principles of law that govern premarital agreements." *Alulddin v. Alfartousi*, 255 Ariz. 436, 442 ¶¶ 18-19 (App. 2023).

¶7        Here, neither party contests the formation of the Agreement. The written agreement was created in contemplation of Wife and Husband's upcoming marriage and signed on April 5, 2019. The Agreement contained a provision reflecting the parties' assent to the Agreement functioning as a premarital agreement, stating, "[w]e also declare that while our marriage is performed according to the Islamic Law, we hereby testify and commit to abide by its terms of agreement and serve it same as a Prenuptial Agreement to make it an inseparable and integral part of this our marriage contract [and] agreement."

¶8        Husband argues that the court erred because the Agreement "was not pled by [Husband] in his Petition, nor did [Wife] do so in her Response to the Petition." Not so. Wife's Response specifically states that the parties had a "written agreement signed by both parties about . . . division of property/debt[.]" *See* Ariz. R. Fam. Law P. 24(b)(5) ("The response may include claims for relief."). And the Response attached a copy of the Agreement. By referencing and attaching the Agreement, Wife pled its existence and terms. And while Husband contends he needed a continuance to develop arguments about the Agreement, he did not request a continuance after the court ruled the Agreement was at issue. We

therefore reject Husband's argument that the court's consideration of the Agreement amended the initial pleadings so that Husband should have been granted a continuance to develop arguments about it.

**¶9**         Husband further argues that the Agreement's award of gold to Wife is vague.  We have previously explained that "[p]rovisions of an antenuptial agreement must be sufficiently specific to be enforceable." *Victor v. Victor*, 177 Ariz. 231, 233 (App. 1993).  "Where parties bind themselves by a lawful contract, in the absence of fraud[,] a court must give effect to the contract as it is written, and the terms or provisions of the contract, where clear and unambiguous, are conclusive."  *Goodman v. Newzona Inv. Co.*, 101 Ariz. 470, 472 (1966).  Here, the terms of the Agreement are clear and unambiguous.  Husband contracted to deliver to Wife "one [k]ilogram of gold grade 21" at a time she requests it.  The Agreement is clear and unambiguous as to the weight and the purity of the gold to be delivered to Wife.  The Agreement is enforceable.

## II.    Wife Concedes Error in the Superior Court's Award of Back Child Support, Which We Vacate.

**¶10**         We review child support awards under an abuse of discretion standard. *Brucklier v. Brucklier*, 253 Ariz. 579, 582 ¶ 10 (App. 2022).  "A court abuses its discretion when the record lacks competent evidence to support its findings."  *Id.*  Retroactive child support shall be awarded where child support has not previously been ordered and "if the court deems child support appropriate[.]"  A.R.S. § 25-320.

**¶11**         Here, Husband argues the superior court abused its discretion in ordering him to pay $6,000 in past child support because Wife never requested back child support.  The superior court may order back child support even in the absence of a request. *See Simpson v. Simpson*, 224 Ariz. 224, 226 ¶ 10 (App. 2010) (holding that a request from a party to order child support is not only absent from A.R.S. § 25-320 but also that imposing such a requirement would be "contrary to public policy . . . [and] would only be to the detriment of the children").  But Wife declines to defend the award of back child support, thus conceding error. *See Thompson v. Thompson*, 126 Ariz. 129, 132 (App. 1980) (recognizing that a party confesses reversible error by failing to defend a ruling where a debatable issue exists).  Wife's concession appears potentially well-founded:  the award for retroactive child support provides, "[i]t is appropriate to award [Wife] an additional judgment for past support in the amount of $6,000 as past support for *the three-year period prior to the filing of the current petition* until [the issuance of the Decree]."  (Emphasis added).  The Decree's language

4

thus contemplates awarding child support from July 2019 – three years prior to the filing of the petition – even though L.H. was born in November 2020. We therefore vacate the award of back child support.

### III.   Wife Disclaims the Award in Her Favor of $25 Per Day for Husband's Failure to Convey the Gold, Which We Vacate.

¶12         Husband objects to the court ordering him to pay Wife $25 for each day he fails to deliver the gold to Wife as not authorized within the parties' contract. True, courts "may use civil contempt sanctions . . . for compelling compliance with a court order[.]" Ariz. R. Fam. Law P. 92(a)(1). But here, the funds are not to be paid into the registry of the court, but are "award[ed as] a penalty against" Husband, meaning they are to be paid to Wife. And Wife disclaims the award of sanctions. We accept her disclaimer of them and vacate that award. *See Thompson*, 126 Ariz. at 132 (failing to defend debatable issue functions as confession of error). Wife suggests we remand to the superior court with instructions to determine Husband's non-compliance and impose any "pre-judgment interest that accrued from the date of Husband's non-compliance." But Wife did not cross-appeal any failure to provide her with such a remedy. And because the record does not reflect any non-compliance by Husband at the time of judgment, there is no preserved and ripe issue on this point for us to review.

### CONCLUSION

¶13         We affirm the enforcement of the premarital agreement, but vacate the award of retroactive child support and the sanctions award. Wife and Husband both ask this Court to award them their reasonable costs and attorneys' fees. In our discretion, we decline to award either party attorneys' fees pursuant to A.R.S. § 25-324. We award Wife her costs, subject to her compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED:         JR

5